```
          IN THE UNITED STATES DISTRICT COURT
           FOR THE SOUTHERN DISTRICT OF OHIO
                     EASTERN DIVISION
```

Dana Leppert,

    Plaintiff,

  v.                              Case No. 2:14-cv-1207

Liberty Life Assurance
Company of Boston,

    Defendant.

<u>OPINION AND ORDER</u>

    This is an action filed by Dana Leppert, a former employee of Triumph Aerospace Systems, an affiliate of Triumph Group, Inc., pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1132(a)(1)(b). Plaintiff seeks payment of long-term disability ("LTD") benefits under the terms of the Triumph Group, Inc., employee benefit plan, which is funded by an insurance policy issued by defendant Liberty Life Assurance Company of Boston ("Liberty"). Under the terms of the Triumph Group, Inc., Group Disability Income Policy ("the Policy"), Triumph Group, Inc., is the plan sponsor, and Liberty is the claims administrator.

    Under the terms of the Policy, a participant is eligible to receive LTD benefits for up to a 24-month period if the participant is "Disabled," that is, that the participant "as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation." AR 9. "'Own Occupation' means the Covered Person's occupation that he was performing when his Disability or Partial Disability began ... as it is normally performed in the national economy." AR 11. Subsequent to the 24-month period, a participant is eligible for LTD disability benefits only if "thereafter, the Covered Person is unable to perform, with

reasonable continuity, the Material and Substantial Duties of Any Occupation." AR 9. "'Any Occupation' means any occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, [and] physical and mental capacity." AR 8. The term "Material and substantial Duties" means "responsibilities that are normally required to perform the Covered Person's Own Occupation, or any other occupation, and cannot be reasonably eliminated or modified." AR 11. The Policy requires that the participant submit proof of disability, including a claim form, an attending physician's statement, and other supporting medical records. AR 17-18.

 Plaintiff, who is now fifty-nine years of age, was employed by Triumph Aerospace Systems repairing aircraft windows. Plaintiff suffers from osteoarthritis and joint problems. He filed a claim for LTD disability benefits on May 2, 2011, and began to receive LTD benefits on October 29, 2011, based on Liberty's finding that plaintiff was physically unable to perform his own occupation. Plaintiff also applied for and received monthly disability benefits from the Social Security Administration, which found that plaintiff's first month of entitlement to benefits was October, 2011.

 On May 3, 2012, Liberty obtained a review of plaintiff's medical records by Dr. Gale G. Brown, Jr., M.D., a board-certified specialist in physical medicine and rehabilitation. A vocational rehabilitation assessment was begun by Lori Ashworth, a vocational rehabilitation counselor, on May 22, 2012, but was not completed. In a report dated February 18, 2013, Dr. Brown reported on an additional review of plaintiff's medical records and completed a

transferable skills analysis.  Another transferable skills analysis was completed on March 8, 2013, by Michelle Reddinger, a certified rehabilitation counselor.  By letter dated June 5, 2013, Liberty asked plaintiff to provide additional medical records in support of his eligibility for continued benefits.  By report dated July 23, 2013, Liberty obtained an independent peer review of plaintiff's records by Dr. Martin Kanner, M.D., a board certified specialist in physical medicine and rehabilitation.

By letter dated September 26, 2013, Liberty advised plaintiff that his LTD benefits would not be paid beyond October 28, 2013, due to his failure to meet the "any occupation" standard which applied after the first twenty-four months of LTD benefits.  Based upon the medical and vocational reviews Liberty received, Liberty determined that plaintiff's symptoms and physical impairments would not preclude him from performing alternate, less physically demanding, full time occupational duties, and specifically identified four occupations which plaintiff could perform.

By letter dated March 29, 2014, plaintiff advised Liberty that he was pursuing an appeal from the denial of benefits.  Plaintiff also provided Liberty with his social security disability file.  In addition to considering these records, Liberty obtained a review of plaintiff's records by Dr. Francesca Litow, M.D., a board-certified specialist in occupational medicine, who provided Liberty with a report on June 4, 2014.  By letter dated June 6, 2014, plaintiff was advised that his appeal was denied.  Plaintiff then filed the instant action seeking to recover benefits under the Policy.

I. Standard of Review

A plan administrator's denial of benefits is reviewed de novo

unless the benefit plan specifically gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan.  Morrison v. Marsh & McLennan Companies, Inc., 439 F.3d 295, 300 (6th Cir. 2006).  Where an ERISA plan gives the plan administrator such discretionary authority, the administrator's decision is reviewed under the arbitrary and capricious standard.  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989).

The Policy provides:

> Liberty shall possess the authority, at its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder.  Liberty's decisions regarding construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

Doc 11, p. 38.

The court finds that the arbitrary and capricious standard of review applies in this case.  In applying the arbitrary and capricious standard, a court will weigh as a factor whether a conflict of interest existed on the part of the decision-maker in determining whether there was an abuse of discretion. Metropolitan Life Ins. Co. v. Glenn, 554 U.S. 105, 115 (2008); Bennett v. Kemper Nat'l Servs., Inc., 514 F.3d 547, 552-53 (6th Cir. 2008).  However, "mere allegations of the existence of a structural conflict of interest are not enough to show that the denial of a claim was arbitrary; there must be some evidence that the alleged conflict of interest affected the plan administrator's decision to deny benefits." Peruzzi v. Summa Medical Plan, 137 F.3d 431, 433 (6th Cir. 1998).  There is no specific evidence in this case that Liberty's status as an insurer impacted the benefits decision in

this case. No history of biased claims administration has been shown. In fact, Liberty granted plaintiff's initial claim for LTD benefits under the broader definition of total disability applicable to that claim. The circumstances of this case and the lack of evidence of bias weigh against a finding of any conflict of interest on the part of Liberty.

II. Denial of Continued LTD Benefits

In reviewing Liberty's decision to deny plaintiff's application for continued LTD benefits, this court applies the arbitrary and capricious standard of review. Review under the arbitrary and capricious standard is "extremely deferential." McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059, 1064 (6th Cir. 2014). "Review under the arbitrary and capricious standard is the least demanding form of judicial review of an administrative action; it requires only an explanation based on substantial evidence that results from a deliberate and principled reasoning process." Morrison, 439 F.3d at 300; see also Shields v. Reader's Digest Ass'n, Inc., 331 F.3d 536, 541 (6th Cir. 2003)("When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious."); Williams v. International Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)(if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision is neither arbitrary nor capricious). This is true regardless of whether an equally rational interpretation is offered by the plan participant. Gismondi v. United Techs. Corp., 408 F.3d 295, 298 (6th Cir. 2005). "The arbitrary and capricious standard requires courts to review the

5

plan provisions and the record evidence and determine if the administrator's decision was 'rational.'" Schwalm v. Guardian Life Ins. Co. of America, 626 F.3d 299, 308 (6th Cir. 2010).  In reviewing the administrator's decision, the court's review is limited to the administrative record which was before the plan administrator at the time of the benefit determination. Schwalm, 626 F.3d at 308.

In denying continued LTD benefits, Liberty relied on its review of plaintiff's medical records as well as several expert opinions.  In his May 2, 2012, report concerning his review of plaintiff's medical records, Dr. Brown concluded plaintiff had permanent partial physical impairment related to his bilateral shoulder and knee diagnoses (rotator cuff tears and advanced osteoarthritis). Doc. 11, p. 126. Dr. Brown stated that plaintiff is restricted to sedentary-light physical work, and that the prognosis for resumption of work at those levels "is considered excellent." Doc. 11, p. 127. Dr. Brown also noted, "There is no evidence for functionally limiting comorbid diagnoses or medication side effects." Doc. 11, p. 127. Dr. Brown also spoke with Dr. Joseph Assenmacher, Jr., M.D., plaintiff's treating orthopedist. They both agreed that plaintiff was currently appropriate for vocational rehabilitation, and that he could perform full-time work with some physical limitations, including: occasional standing and walking, 10 to 15 minutes per session; constant sitting, 45 minutes per session, with allowance for brief position changes as needed; no reaching or lifting above left shoulder level; occasional lifting, carrying, pushing, and pulling up to 10 pounds, and no climbing, squatting, crouching, kneeling, or crawling. Doc. 11, p.

113. In his transferable skills analysis dated February 18, 2013, Dr. Brown indicated that he had reviewed additional medical records which did not change his opinions regarding plaintiff's impairments, and that plaintiff remained capable of full-time, sedentary-light physical work. Doc. 11, pp. 483-484.

Liberty relied on a transferable skills analysis completed by Michelle Reddinger, a certified rehabilitation counselor. Based on the physical limitations opined by Dr. Brown and information concerning plaintiff's employment history, Ms. Reddinger identified four occupations which were compatible: assembler of small products; electronic assembler; information clerk (e.g., mall, airport or visitor's center); and security guard (e.g., badge checker). Doc. 11, pp. 474-476.

Liberty also obtained an independent peer review by Dr. Kanner, who reviewed plaintiff's medical records. Doc. 11, pp. 402-405. Dr. Kanner concluded that plaintiff had partial physical impairments due to bilateral shoulder rotator cuff tears with repair and a left irreparable rotator cuff, and knee impairments due to advanced osteoarthritis requiring right total knee arthroplasty. Doc. 11, p. 413. Dr Kanner noted that the physical restrictions identified by Dr. Brown were medically supported limitations due to plaintiff's orthopedic symptoms, and that these restrictions would be available at a sedentary/light full time occupation. Doc. 11, p. 413.

As part of the appeal process, Liberty obtained an additional records review by Dr. Litow. In her June 4, 2014, report, Dr. Litow found that plaintiff's impairments included a reduced range of motion and muscular strength in his shoulder joints due to

bilateral rotator cuff tears.  Doc. 11, pp. 99-100.  She concluded that plaintiff's restrictions should include: no reaching, lifting or work over shoulder level; limit lifting to 10 pounds frequently and 20 pounds occasionally with both upper extremities; and no climbing ladders, squatting, crawling, kneeling, or crouching. Doc. 11, p. 100.  These restrictions were compatible with the limitations proposed by Dr. Brown.

Liberty also referred in its appeal decision to the December 13, 2011, report of Dr. Elizabeth Das, M.D., who reviewed plaintiff's medical records in connection with plaintiff's application for social security benefits.  In describing plaintiff's residual functional capacity, Dr. Das indicated that plaintiff could: occasionally lift or carry up to 20 pounds; frequently lift or carry up to 10 pounds; stand, walk or sit up to 6 hours; could push or pull; could occasionally climb ramps or stairs, but could never climb ladders, ropes or scaffolds; could frequently stoop and occasionally kneel, crouch, and crawl.  Doc. 11, p. 205.  Dr. Das concluded that plaintiff was capable of light work.  Doc. 11, p. 207.

Based on the evidence in the record, Liberty concluded that plaintiff failed to prove that he was not capable of engaging in "any occupation" as the Policy required for continued LTD benefits. Liberty noted that plaintiff's medical condition "was not of a nature and severity that would have precluded him continuously beyond October 28, 2013[,] from performing the material and substantial duties of the alternative occupations identified as being within his functional capacity and vocational skills."  Doc. 11, p. 93.

8

Plaintiff contends that this finding constituted an abuse of discretion in light of his documented physical conditions, including bilateral shoulder rotator cuff and knee problems. However, the fact that plaintiff has certain physical conditions does not automatically mean that these conditions would constitute functional impairments precluding him from engaging in sedentary or light employment. Liberty correctly notes that the physical capacity assessments of Dr. Brown (which were approved by Dr. Kanner) and Dr. Litow are not contradicted by any other expert opinion in the record, with the exception of the earlier opinion of Dr. Das, who proposed restrictions which were less severe than those proposed by Drs. Brown and Litow. Dr. Assenmacher, plaintiff's treating orthopedist, agreed with Dr. Brown's physical capability determination. Dr. Mark Issa, M.D., and Dr. Ravi Adusumilli, M.D., plaintiff's cardiologists, declined to complete a restrictions form, leaving that task to plaintiff's primary care provider. Dr. Mark C. Nadaud, D.O., plaintiff's primary physician, also declined to offer an opinion regarding plaintiff's work capacity, indicating that a functional capacity evaluation would be needed to answer those questions. Doc. 11, p. 453. Plaintiff failed to provide "proof" in the form of "an attending Physician's statement" or other evidence that his physical conditions entailed functional limitations which would preclude him from performing "any occupation." See Doc. 11, p. 12.

Plaintiff argues that Liberty did not adequately consider his complaints about left-hand numbness and the fact that he is left-hand dominant. Plaintiff raised no issues concerning his hand ailments in his appeal. He alleges for the first time in his

9

motion that he has arthritis in his hands which would preclude him from working.

There are few references in the medical records to any complaint about plaintiff being unable to use his left hand. Plaintiff reported hand numbness to Lori Ashworth during a vocational rehabilitation assessment and claimed he had an appointment with Dr. Assenmacher on June 13, 2012. As a result, Ashworth recommended that the referral of plaintiff's case to her be put on hold until the results of the appointment were obtained. Doc. 11, p. 109.  However, Dr. Assenmacher's treatment notes for June 13, 2012, make no reference to left hand numbness or problems. Doc. 11, p. 499.  The April 8, 2013, examination report of Dr. Nadaud, noted that plaintiff had some deformity of digits and complained of pain in his hands, but offered no opinion as to whether these conditions would result in functional limitations. Doc. 11, p. 463.  Dr. Litow referred specifically to this record in her report, Doc. 11, pp. 97, yet found no work limitations based on this information.  Dr. Das noted in her earlier report of December 12, 2011, that plaintiff's handling, fingering and feeling were unlimited.

There is no medical evidence in the record supporting plaintiff's claim that he suffers from an inability to use his left hand which, alone or in combination with other impairments, would preclude his ability to work at the level identified by Dr. Brown and Dr. Litow.  Liberty was correct in noting in the appeal decision that "no impairments, restrictions, or limitations have been supported [regarding manual dexterity] on the medical reviews documented on file."  Doc. 11, p. 92.

10

Plaintiff also argues that Liberty acted arbitrarily and capriciously in relying on Reddinger's transferable skills analysis and vocational review. In support of his appeal, plaintiff presented printouts from the Occupational Information Network (O*NET) and the Dictionary of Occupational Titles (DOT) concerning the positions identified by Reddinger, and argued that his physical limitations would preclude him from performing those jobs. Plaintiff offered no evidence from a vocational counselor or physician in support of his arguments. Liberty rejected plaintiff's arguments and accepted the opinion of Reddinger, a certified rehabilitation counselor, that plaintiff would be able to perform the sedentary duty occupations she identified. Liberty did not abuse its discretion in doing so.

Under the terms of the Policy, plaintiff was required to give Liberty proof of continued disability, that is, that he was "unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation." Doc. 11, pp. 9, 18, 30. "Proof" is defined as "evidence in support of a claim for benefits and includes, but is not limited to, ... an attending Physician's statement[,] ... the provision by the attending Physician of standard diagnosis, lab findings, test results, ... and/or other forms of objective medical evidence [.]"

In addition, the Policy terms do not require Liberty to identify a particular position that a claimant might fill before it determines that the claimant is not disabled. Likewise, Liberty was not obligated to demonstrate that a suitable position at a particular wage existed in a given geographic area and was available for plaintiff's immediate hire. The Policy states that

11

in determining disability, "Liberty will not consider employment factors including, but not limited to, interpersonal conflict in the workplace, recession, job obsolescence, paycuts, job sharing and loss of a professional or occupational license or certification." Doc. 11, p. 18. Because the Policy does not require the identification of a specific job currently available within plaintiff's geographical area, Liberty's failure to do so does not render its decision arbitrary or capricious, where it obtained through proper sources a determination that plaintiff could perform a broad range of sedentary jobs, and the specific jobs listed were merely illustrations of what plaintiff could perform. See Curry v. Eaton Corp., 400 F.App'x 51, 70 (6th Cir. 2010). Rather, it was plaintiff's burden under the policy to prove that he was unable to perform the duties of "any occupation" for which he "is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity." Doc. 11, p. 8.

The record indicates that plaintiff was awarded social security disability benefits. An ERISA plan is not bound by the SSA's decision that a participant was disabled. Combs v. Reliance Standard Life Ins. Co., 511 F.App'x 468, 472 (6th Cir. 2013); Calvert v. Firstar Fin., Inc., 409 F.3d 286, 294 (6th Cir. 2005). A plan administrator's failure to address the finding of the SSA can render the denial of further LTD benefits arbitrary and capricious. Calvert, 409 F.3d at 295.

In this case, Liberty stated in its appeal letter that it had considered the fact that plaintiff had been awarded social security disability income. Liberty noted that this award was not determinative of plaintiff's entitlement to benefits under the

12

Policy, and that Liberty had considered additional medical and vocational reviews, as well as more current medical records, that were not considered by the Social Security Administration. This court notes that the social security records presented do not clearly identify what type of social security benefits were awarded or whether they were based on plaintiff's inability to perform his prior job of airplane window installer or any job. In her social security review of plaintiff's records, Dr. Das concluded that plaintiff was no longer capable of performing his prior job as an airplane window installer, but that he was capable of performing light work. Dr. Das's opinion is consistent with the medical and vocational findings of Drs. Brown, Assenmacher, Kanner and Litow, and with Reddinger's vocational assessment. Liberty adequately explained why it was not giving significant weight to the SSA's award of social security disability benefits, and did not act arbitrarily and capriciously in arriving at a different decision under the terms of the Policy. See O'Bryan v. Consol Energy, Inc., 477 F.App'x 306, 308 (6th Cir. 2012)(plaintiff did not demonstrate that plan administrators acted arbitrarily and capricious where they explained how they distinguished the decision to award social security benefits).

    The court's review of the administrative record establishes that Liberty did not act arbitrarily and capriciously in determining that plaintiff had failed to prove that he was totally disabled, as required under the Policy for the continuation of LTD benefits.

III. Improper Calculation of Benefits

    Plaintiff's complaint includes a claim in Count II based on

13

Liberty's alleged failure to pay the correct amount of LTD benefits during the twenty-four months that such benefits were paid. Liberty argues that it is entitled to judgment on this claim because plaintiff failed to exhaust his administrative remedies under the Policy. ERISA's administrative scheme requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court. Miller v. Metropolitan Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991). The decision whether to apply the exhaustion requirement is committed to the discretion of the district court. Costantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir. 1994). Exhaustion and review by plan administrators allows plan fiduciaries to efficiently manage their funds, to correct their errors, to interpret plan provisions, and to assemble a factual record which will assist the court in reviewing the fiduciaries' actions. Ravencraft v. UNUM Life Ins. Co. of America, 212 F.3d 341, 343 (6th Cir. 2000)(citing Makar v. Health Care Corp. of Mid-Atlantic, 872 F.2d 80, 83 (4th Cir. 1989)).

    Plaintiff was advised of his right to appeal in Liberty's decision letter of September 26, 2013. The letter informed plaintiff that his written request for review "must be sent within 180 days of the receipt of this letter and state the reasons why you feel your claim should not have been closed." Doc. 11, p. 400. The letter further advised that if plaintiff failed to request review, "our claim decision will be final, your file will remain closed, and no further review of your claim will be conducted." Doc. 11, p. 400. Plaintiff's appeal letter of March 29, 2014, made no reference to any miscalculation of benefits previously paid. Doc. 11, pp. 120-123. Likewise, neither the September 26, 2013,

14

denial letter nor the June 6, 2014, appeal decision addressed any error in the calculation of paid benefits.[1]  Plaintiff did not exhaust his administrative remedies on this claim, and it is not properly before this court.

IV. Conclusion

The court concludes that Liberty did not act arbitrarily and capriciously in determining that the plaintiff was no longer entitled to disability benefits under the Policy, and Liberty is entitled to summary judgment on Count I.  Count II is dismissed without prejudice for failure to exhaust administrative remedies.  In accordance with the foregoing, plaintiff's motion for judgment on the administrative record (Doc. 15) is denied.  Defendant's motion for summary judgment (Doc. 14) is granted.

Date: March 24, 2016                   s/James L. Graham
                                     James L. Graham
                                     United States District Judge

---

[1] The only discussion of the amount of plaintiff's benefits in the administrative record occurs following letters to plaintiff dated September 20, 2011, and September 22, 2011, in which Liberty advised plaintiff of an overpayment of his weekly short term disability benefits (paid prior to his eligibility for LTD benefits) which would be recouped by reducing the amount of plaintiff's LTD checks. Doc. 11, pp. 378, 381. After plaintiff disputed Liberty's calculations by e-mail, see Doc. 11, pp. 368-369, 412, a series of internal e-mails at Liberty ensued. In a final e-mail dated October 27, 2011, Benefits Manager Peggy A. Gorman stated, "Per our conversation this confirms that Liberty should waive the $3,266.72 overpayment and use the [$]76,555.23 as [a] base for LTD payments." Doc. 11, p. 367. The $76,555.23 figure is the same taxable income figure which plaintiff claimed should be the basis for his benefits calculations. Doc. 11, p. 368. The administrative record includes no evidence that Liberty ever reduced plaintiff's disability checks to recoup any overpayment.

15